NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
Shaheen Torgoley
Brett Ruff
Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Email: Shaheen.Torgoley@usdoj.gov
         Brett.Ruff@usdoj.gov
*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>SEBASTIAN OCADIZ-CASTRO,<br><br>  Defendant. | Case No. 2:20-cr-00156-RFB-DJA<br><br>**Government's Response to Sebastian Ocadiz-Castro's Motion to Reopen Detention Hearing [ECF No. 94]** |

Certification: This document is timely filed.

This Court should deny Defendant Sebastian Ocadiz-Castro's motion to reopen detention hearing (ECF No. 94).[1] Ocadiz-Castro has presented no new, previously unknown information material to whether there are conditions of release that will reasonably assure the safety of the community.

---

[1] Although Ocadiz-Castro's filing included "Motion for Pretrial" release in its title, the Court Clerk ordered that such a motion would need to be filed separately. ECF No. 95. Ocadiz-Castro did not separately file such a motion, so the government responds to his motion to reopen detention.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Background

On July 8, 2020, a federal grand jury indicted 13 people, including Ocadiz-Castro, on 21 federal charges. ECF No. 1. The grand jury brought five charges against Ocadiz-Castro: three counts of Distribution of a Controlled Substance, one count of Conspiracy – Dealing in Firearms Without a License, and one count of Conspiracy to Distribute a Controlled Substance. The evidence will show that, in furtherance of and in coordination with the MS-13 gang, Ocadiz-Castro sold, *inter alia*, several firearms—including an AR-15-style semiautomatic rifle, two ounces of nearly pure methamphetamine, and half an ounce of cocaine.

Ocadiz-Castro made his initial appearance on July 15, 2020 before Magistrate Judge Nancy J. Koppe. ECF No. 35. Judge Koppe held a detention hearing and ordered Ocadiz-Castro detained pending trial. At the outset, Judge Koppe found there was a rebuttable presumption that no condition or combination of conditions will reasonably assure Ocadiz-Castro's appearance and assure the safety of the community. ECF No. 68 at 2. Judge Koppe further found that Ocadiz-Castro had "not introduced sufficient evidence to rebut the presumption" that no condition or combination of conditions will reasonably assure the safety of the community, and held that detention was therefore appropriate. *Id*. at 2–3; *see also* ECF No. 51 at 19:7–20:22.

Although that finding was sufficient grounds on which to detain Ocadiz-Castro, Judge Koppe separately found that the government had proven "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." ECF No. 68 at 2. Ocadiz-Castro has

provided no new, previously unavailable material information that would warrant reopening Judge Koppe's findings and order.

**II.     The legal standard requires information to be both new and material to the issue.**

A detention hearing may be reopened only "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a *material bearing* on the issue whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(f)(2) (emphasis added). That is, the defendant must present new information *and* that new information must have a "material bearing" on the appropriateness of pre-trial detention. *See United States v. Woods*, No. 2:16-cr-00046-GMN-PAL, 2017 WL 2261062, at *5 (D. Nev. May 22, 2017). Courts interpret this rule strictly. *See, e.g., United States v. Dillon,* 938 F.2d 1412, 1415 (1st Cir. 1991) (affirming decision not to reopen detention where defendant's new attorney presented "18 affidavits from those who knew appellant" because such information was not new).

The rationale for the rule is discussed in *United States v. Flores*, 856 F. Supp. 1400 (E.D. Cal. 1994): "A rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule that encourages piecemeal presentations. Judicial efficiency is not served by such a practice." *Id.* at 1406.

"The test for whether proffered information is new information previously unknown to the defendant is whether the information was unknown at the time of the hearing, not whether a witness's willingness to testify was unknown to the movant." *United States v. Martin*, No. 13-cr-00466-JSW, 2015 WL 3464937, at *2 (N.D. Cal. May 29, 2015); *accord United States v. Ward*, 235 F. Supp. 2d 1183, 1185 (N.D. Okl. 2002) ("The proffered

information about Defendant's background, ties to the community and employment history were all known at the time of the September 24, 2002 hearing. Accordingly, it does not provide a basis for reopening the detention determination."). "[I]f evidence was available at the original hearing, no rehearing is granted." *United States v. Turino*, No. 2:09-cr-132-JAD-GWF, 2014 WL 5261292, at *1 (D. Nev. October 15, 2014).

### III. Applying the legal standard requiring new and material information, the Court should deny Ocadiz-Castro's motion.

Ocadiz-Castro's motion provides no new, previously unknown information material to whether there are conditions of release that will reasonably assure the safety of any other person and the community. Ocadiz-Castro instead revisits arguments already rejected by the Court during the detention hearing and provides exhibits that were available to him at the time of the hearing.

Specifically, Ocadiz-Castro begins by arguing that he has a supportive family that is committed to ensuring he stays out of trouble. ECF No. 94 at 5–6. But information about family support is precisely the sort of "readily available" information on which Ocadiz-Castro could have relied at his detention hearing—not new information warranting reopening detention. In fact, Ocadiz-Castro outlined his family support during the detention hearing, but Judge Koppe rejected such arguments and explained:

> The Court notes that the residence where his potential third-party custodians live is the same residence where the defendant was living during the entire period of time that the allegations in the Indictment took place. The defendant's mother has stated that she was unaware of the handgun at the residence and was unaware of the defendant's use of alcohol and controlled substances. The Court finds that the defendant's mother is not an appropriate third-party custodian.

ECF No. 68 at 3.

Ocadiz-Castro next argues that he is an entrepreneur and the more than $24,000 in cash found in his bedroom upon his arrest was from, or in support of, his business ventures. ECF No. 94 at 6–8. As an initial matter, the notion that Ocadiz-Castro is an entrepreneur is consistent with the allegations of the indictment: Ocadiz-Castro sold methamphetamine, cocaine, and firearms to generate income and further the goals of the MS-13 gang. The references in the motion to Ocadiz-Castro's employment at IHOP also are consistent with the evidence that will be presented in this case, as the evidence will show that Ocadiz-Castro sold cocaine on November 21, 2019 near the IHOP at 7400 S. Las Vegas Boulevard during a break from his IHOP shift.

Further, the contentions in Ocadiz-Castro's motion about the purported origin and purpose of the over $24,000 in cash found at the time of his arrest were not "unknown at the time of the hearing" and so cannot form the basis of a motion to reopen detention. *See Martin*, 2015 WL 3464937, at *2. Ocadiz-Castro already argued to the Court that the bulk cash came from the sale of vehicles and was intended to be put toward a car washing and detailing business. That Ocadiz-Castro now provides documentation claiming to show the origin of some of the $24,167 does not change this result. That documentation originated before the detention hearing (*see* Exs. B–D), presumably was known to Ocadiz-Castro before the detention hearing, and so does not constitute the sort of information "not known to the movant at the time of the hearing" that permits a Court to reopen a detention hearing under Section 3142(f)(2). *See Turino*, 2014 WL 5261292, at *1 (applying "the strict standard presented in 18 U.S.C. § 3142(f)" and rejecting efforts to reopen detention based on information that was not "newly discovered, material information").

Even if Ocadiz-Castro had produced new, previously unavailable information, he does not explain why a rational entrepreneur who took out a loan for $10,000 in early March 2020 at a 20.53% annual percentage rate would still hold it in a clear plastic bag in his bedroom over four months later:



(This photo was produced to Ocadiz-Castro in discovery.)

One would think that an entrepreneur would at least wish to ensure the safety of such capital by placing it in an FDIC-insured, interest-bearing account, rather than keeping it in a bedroom protected by a firearm.[2] Although Ocadiz-Castro makes a passing reference to being able to obtain better prices if he paid cash, ECF No. 94 at 10, it makes little business sense to stockpile such large amounts of cash for so long in one's bedroom.

---

[2] Also of note is that, by July 14, 2020, the date law enforcement found the $24,167 in cash, only about $8,500 of the initial $10,000 would have remained. The Truth in Lending Act Disclosure attached to Ocadiz-Castro's motion at Exhibit B shows that, beginning April 4, 2020, Ocadiz-Castro was obligated to make a monthly payment of $374.34 against the $10,000 loan. By mid-July, he would have made four payments of $374.34 for a total of $1,497.36.

Ocadiz-Castro next argues that he has no criminal history. ECF No. 94 at 8. Again, this is not new information unknown to Ocadiz-Castro at the time of his detention hearing. Pretrial Services already communicated this point to the Court and parties. PSR at 3.

Ocadiz-Castro also contends that detention is inappropriate because he is not an official member of the MS-13 gang. ECF No. 94 at 8–9. But this is not new information, and it therefore cannot serve as a basis to reopen detention. Ocadiz-Castro even concedes that the government acknowledged this point *during the detention hearing*, *id.* at 8, meaning it already was considered in Judge Koppe's reasoned decision.

Even if this were new information, the fact that Ocadiz-Castro is not an official member of the MS-13 gang does not mean that he did not or could not have performed illicit activities in support of, and in coordination with, the MS-13 gang. As Ocadiz-Castro acknowledges, he is fairly young, having just turned 20 years old. ECF No. 94 at 5. And it appears from information available to law enforcement that, at the time of the activities giving rise to this case, Ocadiz-Castro recently had begun the multistep process of becoming an official member of the MS-13 gang. The drug and firearm sales in which he allegedly participated are consistent with the activities of someone hoping to become a full-fledged member of the gang.

Finally, Ocadiz-Castro provides two 2019 invoices indicating that he purchased a firearm in January 2019 and another in March 2019. ECF No. 94 at Ex. J. Neither firearm is identified in the indictment. Ocadiz-Castro also provides two bills of sale stating that he sold those firearms in April 2019 and May 2019, *id.*—i.e. prior to the timeframe covered by the indictment. Yet again, these materials all were generated long before the detention hearing and were known to Ocadiz-Castro before the hearing. They should not serve as a basis to reopen detention.

Furthermore, it is unclear what relevance the materials have to the question of detention. If anything, the documents in Exhibit J hurt, rather than help, Ocadiz-Castro's request for release. His ability to produce documents related to legitimate firearm purchases contrasted with his inability to provide documents related to the sales alleged in the indictment suggests that he knew the firearm sales in support of MS-13 were illegitimate and so did not document them.  Regardless, unrelated firearm sales do not aid Ocadiz-Castro with respect to the question of detention. Selling guns outside MS-13-related activity does not render the indicted charges less weighty, and does not make the seller a better candidate for release.

## IV.   Conclusion

Ocadiz-Castro has presented no new, material information to the Court.  His request simply varnishes and resubmits the same arguments he raised before the Court at the detention hearing. Therefore, the government respectfully requests that the Court deny Ocadiz-Castro's motion to reopen detention hearing.

**DATED** this 18th day of July, 2020.

Respectfully submitted,

NICHOLAS A. TRUTANICH
United States Attorney

 /s/ Brett C. Ruff
BRETT C. RUFF
Assistant United States Attorney